Glenn C. **BAILEY**, Lillian S. Bailey, and Inez N. Bailey, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 19874.

United States Court of Appeals Ninth Circuit.

March 25, 1966.

Rutan & Tucker, by Warren Sikora, Santa Ana, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Richard J. Heiman, Harry Marselli, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Division, Los Angeles, Cal., for appellee.

Before JERTBERG and BROWNING, Circuit Judges, and MUECKE, District Judge.

BROWNING, Circuit Judge:

The question presented is whether taxpayers who intended to achieve a nontaxable corporate liquidation under section 112(b) (7) of the Internal Revenue Code of 1939 entertained the "view" which would have rendered the corporation "collapsible" within the meaning of 1939 Code section 117(m). The district court held that they did, and we affirm.

The taxpayers were engaged in subdividing real property and building and selling homes. They purchased an unimproved parcel in Santa Ana, California, in November 1951, and by July 31, 1952, had constructed one hundred and twenty low-priced homes on the property.

The one hundred and twenty units were divided into two sets of sixty houses each. Sale of the first sixty began in March 1952, and was completed by February 1954. Gain resulting from these sales was reported as ordinary income, and is not involved here.

The taxpayers encountered difficulty in financing the second sixty houses. Their accountant agreed to loan them the necessary funds, but insisted that they form a corporation, transfer the sixty houses to it, and pledge its stock as security for the loan.

The taxpayers organized the corporation in March 1952, transferred the homes to it, and placed the stock in escrow to secure the loan.

It was contemplated that the corporation would be liquidated within a year—that being the period needed to repay the loan—and that during this time the corporation would complete the homes and rent them. It was further contemplated that the homes would not be sold by the corporation, but would be returned to the taxpayers and sold by them individually. Liquidation of the corporation was completed in April 1953, and the homes were transferred to the taxpayers as individuals, as planned. The taxpayers sold twenty-two of the homes in 1953, fourteen in 1954, seventeen in 1955, and seven in subsequent years.

Before forming the corporation, the taxpayers were advised by their accountant that the corporation could be formed and liquidated without tax consequences, under the provisions of section 112(b) (7) of the Internal Revenue Code of 1939. The taxpayers believed that this had been done. However, when their 1953 returns were being prepared, they discovered that a tax-free liquidation had not been accomplished because the election required by section 112(b) (7) (D) had not been filed on their behalf. See Lambert v. Commissioner, 338 F.2d 4 (2d Cir. 1964), affirming Ralph Lambert, T.C. Memo. 1963–296. They therefore included in their 1953 returns the appreciation in the value of the homes while held by the corporation. They reported the increase in value as long-term capital gain. The Commissioner of Internal Revenue concluded that the gain was taxable as ordinary income because the corporation was "collapsible" within the meaning

of section 117(m). The taxpayers paid the additional tax, and brought this refund action. The district court upheld the Commissioner, and the taxpayers appealed.

Section 117(m) (1) provides that gain from the exchange of stock of a "collapsible corporation" shall be taxed as ordinary income; and section 117(m) (2) (A) defines a collapsible corporation as one availed of for the construction of property "with a view to": "(i) * * * a distribution to its shareholders, prior to the realization by the corporation * * * of a substantial part of the net income to be derived from such property; and (ii) the realization by such shareholders of gain attributable to such property."

The purpose of section 117(m) was to close a tax loophole described by the General Counsel of the Treasury Department, in the course of House Committee hearings, as follows:

"The corporation is organized at the beginning of construction and is liquidated upon completion of the project and before any sales are made. If the corporation continued in existence and sold all the units itself, it would pay an ordinary income tax on the difference between the amount received for the units and the cost of construction. This tax would be in addition to taxes payable by the shareholders with respect to dividends received by them. In order to secure tax benefits, the corporation is permitted to exist only until the construction is completed and, upon liquidation, the value of the assets distributed is estimated at the amount for which it is expected the units will be sold. On this basis, the stockholders report as a long-term capital gain the difference between the net amount they expect to receive and the cost of the stock owned by them at the time of the liquidation.

"Having received the assets, the stockholders proceed to sell the units and report for tax purposes only the difference, if any, between the value at which the units were acquired on the liquidation and the actual selling price.

"* * * the Treasury Department believes that legislation should make certain that this tax avoidance technique will not be used to advantage in the future." (1 Hearings Before House Committee on Ways and Means on Revenue Revision of 1950, 81st Cong., 2d sess., p. 138.)

The present case falls within this description. If the corporation involved here were not "collapsible," then gains which would have been taxed at ordinary income rates (either in the hands of the corporation if the liquidation had not occurred, or in the hands of the present taxpayers if the corporate form had not been utilized) would be taxed at capital gain rates, and the purpose of section 117(m) would be frustrated. Moreover, the resulting tax advantage would be wholly unforeseen by the taxpayers—they did not expect to be taxed at capital gain rates when the property was distributed to them; they expected to be taxed at ordinary income tax rates when the houses were later sold.

The taxpayers concede that their corporation met the statutory definition of a "collapsible" corporation in all respects but one. They contend that they did not act "with a view to * * * the realization of gain attributable to" the sixty homes, because they intended to liquidate the corporation without tax consequences, pursuant to section 112(b) (7). They argue, in substance, that section 117(m) (2) (A) (ii) is to be read as providing that a corporation is collapsible only if the stockholders contemplate that they will receive gain attributable to the increase in value of the property while in the hands of the corporation, as the statute clearly provides, and also anticipate (1) that this gain will be taxable to the stockholders, and (2) that the tax will be imposed as of the date of liquidation.

I

There is nothing in the language of section 117(m) (2) (A) (ii) to indicate

that the stockholders must have anticipated that the gain received would be taxable. Section 117(m) (2) (A) (ii) speaks in terms of a "view" by the taxpayer to "realization" of gain attributable to the property. In tax parlance, "realization" is often contrasted with "recognition" to distinguish between gain received and gain subjected to tax. Indeed, taxpayers' position that gain from a completed section 112(b) (7) liquidation of a "collapsible" corporation would not be subject to tax under section 117(m) (1) depended upon precisely this distinction.[1] We see no sufficient reason to ignore the distinction in interpreting section 117(m) (2) (A) (ii). As we have seen, to do so would lead to a result inconsistent with the purpose of Congress in the circumstances of this case. No reason has been suggested for believing that Congress intended to immunize stockholders of an otherwise collapsible corporation from the tax consequences imposed by the collapsibility section if they mistakenly believed that gain from the corporate distribution would not be taxable to them.

It may be noted in passing that the precise question cannot arise under the 1954 Code because it withholds the benefits of a non-taxable one-month liquidation (section 333(a) (2)) from a "collapsible corporation to which section 341 (a)[2] applies." IRC of 1954 § 333(a). This formulation, it will be observed, assumes that a corporation would be collapsible despite a "view" by the stockholders that they were not required to pay tax on the gain from property received in a one-month liquidation.

The taxpayers argue that "realization" should be given the meaning of "recognition" in section 117(m) (2) (A) (ii) of the 1939 Code since it has been given this meaning in IRC 1954 § 341(b) (1) (the successor to section 117(m) (2) (A) (i)),

because of the interaction of the latter section and section 337 of the 1954 Code. See Rev.Rul. 58–241, 1958–1 Cum.Bul. 179; Surrey & Warren, Federal Income Taxation 1382 (1960 ed.); Axelrad, 1960 So.Cal. Tax Inst. 269, 353–54; 3B Mertens, Law of Federal Income Taxation § 22.57, p. 240 n. 54.

Even if we assume that this interpretation of the word "realization" in IRC 1954 § 341(b) (1) is correct, and further assume that "realization" should be read the same way in subsection (i) of section 117(m) (2) (A) of the 1939 Code, it does not follow that the word must be given this meaning in subsection (ii) of section 117(m), when to do so would frustrate the congressional purpose. The taxpayers do not contend that the word "recognition" can be given the meaning of "realization" throughout the Code; and when the identical word is used with varying meanings within a single statute, the word should be interpreted in each context according to the intent of Congress. Grand Lodge, IAM v. King, 335 F.2d 340, 344–345 (9th Cir. 1964). We think that in the context of subsection (ii) of section 117(m) (2) (A) of the 1939 Code, the phrase "realization of gain" refers simply to the receipt of gain, and not necessarily gain which subjects the stockholder to tax; and since in this case the taxpayers unquestionably contemplated the receipt of economic gain in consequence of the corporate liquidation, we think they had the "view" described in section 117(m) (2) (A) (ii).

II

Even if the collapsibility section required that the taxpayer anticipate an individual tax liability on the distribution of corporate property, we would see no reason for conditioning collapsibility, as

---

1. The argument is that although gain is "realized" on liquidation of the collapsible corporation, it is immunized from taxation because of § 112(b) (7)'s provision that the gain on liquidation will not be "recognized," except as provided in that

section. 3B Mertens, Law of Federal Income Taxation § 22.57, p. 239; DeWind & Anthoine, 56 Colum.L.Rev. 475, 522–23 (1956).

2. Sec. 341(a) is the collapsible corporation section of the 1954 Code.

the argument of the taxpayers would have us do, upon the presence of the further expectation that the tax would be imposed as of the date of liquidation.[3]

Revenue Ruling 56–160, 1 Cum.Bul. 1956–633, might seem to favor the taxpayers' argument. However, the question presented there was whether the gain realized by a stockholder from the ultimate sale of real property received in a section 112(b) (7) liquidation of a collapsible corporation was taxable at ordinary income rates in accordance with that section, or at capital gain rates in accordance with 1939 IRC § 117(j). The answer to this question is not necessarily the same as the answer to the question of whether collapsibility requires an expectation on the part of the stockholders that they will be taxed as of the date of liquidation, rather than as of the later date when they ultimately sold the property received as a result of the liquidation. Rev.Rul. 56–160 makes no mention of the presence or absence of the "view" necessary to collapsibility.

■ The basic purpose of section 117 (m) was to tax stockholders of collapsible corporations at rates applicable to ordinary income rather than capital gains on the gain from the transfer of assets previously purchased or manufactured by the "collapsible" corporation but subsequently disposed of before the corporation became responsible for the tax liability on the gain from the assets. Whether the stockholders expected to be taxed upon the gain when they received the prop-

erty, or when they later disposed of it, or at all, is irrelevant to this purpose.

■ The taxpayers' attempt to engraft additional elements upon the intent required by the language of section 117 (m) (2) (ii) must be rejected. In Braunstein v. Commissioner, 374 U.S. 65, 83 S.Ct. 1663, 10 L.Ed.2d 757 (1963), the Supreme Court turned back a similar effort to add to the statutory language the additional requirement of a motive to evade tax, stating (374 U.S. at 70, 83 S.Ct. at 1666):

"There is nothing in the language or structure of the section to demand or even justify reading into these provisions the *additional* requirement that the taxpayer must in fact have been using the corporate form as a device to convert ordinary income into capital gain. If a corporation owns but one asset, and the shareholders sell their stock at a profit resulting from an increase in the value of the asset, they have 'gain attributable to' that asset in the natural meaning of the phrase regardless of their desire, or lack of desire, to avoid the bite of federal income taxes."

The taxpayers' reliance upon cases [4] holding that the necessary "view" is lacking where the decision to collapse is reached only after construction of the property has been completed, and where the decision is based upon unforeseen circumstances beyond the taxpayer's control, is obviously misplaced.

Affirmed.

---

3. As noted earlier, the taxpayers do not contend that they intended to avoid tax on the appreciation in value of the property, but only that they intended that the tax be deferred in accordance with 1939 IRC § 112(b) (7) until they eventually sold the houses in their individual capacities.

4. See Commissioner of Internal Revenue v. Lowery, 335 F.2d 680 (3d Cir. 1964);

Commissioner of Internal Revenue v. Solow, 333 F.2d 76 (2d Cir. 1964); Jacobson v. Commissioner of Internal Revenue, 281 F.2d 703 (3d Cir. 1960); Shilowitz v. United States, 221 F.Supp. 179 (D.N.J. 1963); Elliott v. United States, 205 F. Supp. 384 (D.Ore.1962); Southwest Properties, Inc., 38 T.C. 97 (1962); Maxwell Temkin, 35 T.C. 906 (1961).