**William E. BROCK, III, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 1130, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Defendant,**

**Laborers' International Union of North America, AFL–CIO, Intervenor–Defendant.**

**No. CV–F–86–644 REC.**

United States District Court, E.D. California.

Oct. 27, 1987.

Mark St. Angelo, Asst. U.S. Atty., Sacramento, Cal., for plaintiff.

Susan M. Sacks, Laborers' Intern. Union, Washington, D.C., for defendant.

Sandra R. Benson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for intervenor-defendant.

## DECISION AND ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

COYLE, Chief Judge.

Plaintiff, the Secretary of Labor, brings an action for declaratory and injunctive relief on behalf of Emma Norby. The Secretary alleges that Local 1130 and its parent union, Laborers International Union of North America, AFL–CIO, violated a provision of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481(c), when it removed Emma Norby from her elected position as Recording Secretary/Secretary–Treasurer/Delegate and held a special election to replace her. The Secretary seeks a declaratory judgment

that Norby's original election was valid and that the rerun election was invalid. The Secretary also seeks an order requiring defendant to install Norby in that office.

Although the original complaint was lodged only against Local 1130, the parent union, Laborers International Union of North America, AFL–CIO, was later joined by consent of the parties. The parent union now brings a motion for summary judgment, in which Local 1130 has joined. The Secretary brings a counter-motion for summary judgment. Both sides agree that there are no factual issues in dispute.

A hearing on the motions for summary judgment was held on October 5, 1987. Having considered the written and oral arguments of counsel and the entire record herein, the court now grants the Secretary's motion for summary judgment for the reasons set forth below.

### A. *Facts.*

Emma Norby is, and has been throughout this dispute, employed as the office manager for Local 1130. As a condition of her employment by Local 1130, Norby was required to become a member of both Local 1130 and the International Union. Since 1979, Norby has been a member in good standing of both the Local and the International. In 1986, Norby decided to run for the office of Recording Secretary/Secretary–Treasurer/Delegate of Local 1130. She was nominated for that office in April 1986 and the election committee of Local 1130 found her "qualified" to run. The election was held in June of 1986 and Norby defeated her one opponent by a wide margin.

After the election, two members of Local 1130 protested Norby's eligibility to office. The General Secretary–Treasurer of the International Union ruled that Norby was not qualified to hold the office to which she had been elected because she was not "working at the calling" at the time of her election as required by the Union Constitution and Bylaws. Norby timely appealed to the International's General Executive Board, which denied her appeal. That decision was later appealed to the annual convention of the International Union, which also ruled against Norby. Norby filed a timely complaint with the Secretary of Labor, who now files a complaint with this court.

### B. *Interpreting the Union Constitution.*

There are two union constitutions involved in this controversy. The Uniform Local Union Constitution of the Laborers International Union of North America (ULUC) has been adopted by Local 1130 and governs the actions of the Local. The International Union Constitution (International Constitution) governs the action of the International. Norby was disqualified from her position under Article 5, Section 4 of the ULUC, which reads:

No person shall be eligible to hold any office in the local union if he has not been regularly working at the calling of the International Union during the entire year immediately prior to nomination. 'Working at the calling' shall be defined to include:

(a) Employment in a full-time official capacity for the Local Union;

(b) Employment by government or the trade union movement in a capacity directly related to the calling and one which would directly benefit the Local Union and its members.

(c) Periods of unemployment where the member was available for and continuously and actively sought employment at the calling, which shall be understood to require full compliance with the lawful rules of the referral service or hiring hall, if any, operated by the Local Union;

(d) Members who can prove they were unable to work because of temporary illness or disability of less than one year so long as that member has a reasonable expectation of returning to work in the foreseeable future.

It is clear to the court that the purpose of subsections (a) through (d) was to expand the ordinary definition of "working at the calling." It appears that under ordinary circumstances, "working at the calling" means working at a job function which is ordinarily represented by the union. (For instance, a plumber would be "working at the calling" of a plumber's union.)

Under the ULUC, there are four categories of members who are eligible to run for office:

(1) Those who are "working at the calling" within the ordinarily accepted definition of that term. See ULUC, Article 5, Section 4.

(2) Elected union officials who work full time for the local union. See ULUC, Article 5, Section 4(a).

(3) Those employed by the government or another trade union in a capacity which directly benefits the local union. See ULUC, Article 5, Section 4(b).

(4) Those who are temporarily unemployed or temporarily disabled due to illness or injury. See ULUC, Article 5, Section 4(c) and (d).

In deciding Norby's appeal, the International Union appeared to start with the presumption that Norby did not fall within the ordinary, everyday definition of "working at the calling." Therefore, the International Union addressed itself to the question whether Norby fell within the expanded definition of "working at the calling" provided by subsection (a). In order for Norby to have fallen within the scope of subsection (a), she would have to have been working "in a full-time official capacity for the local union." Although Norby was clearly working in a full-time capacity for the local union, the International ruled that she was not working in a "full-time *official* capacity." (Emphasis added.) The International Union ruled that subsection (a) applied only to elected officials who worked full time for the local union.

The Secretary argues that Norby is qualified for office because she fits within the ordinary, everyday definition of "working at the calling." Both sides admit that there are office clerical workers working for employers other than the local union who are now members in good standing of the local union. If office clerical workers are "working at the calling," the Secretary argues, then Norby fits within the ordinary definition of "working at the calling." Therefore, Norby need not rely on the expanded definition of "working at the calling" provided by subsection (a).

The Secretary also argues that the International's interpretation of "working at the calling" contradicts the International's definition of those same words as they are used in ULUC, Article 3, Section 1(a). Section 1(a) reads: "In order to be eligible for membership, a person must be working at the calling within the territory of the local union of which the individual applies for membership." It is undisputed that Norby is a member in good standing of the local union and falls within the definition of "working at the calling" within Section 1(a).

The unions argue that "working at the calling" can mean two different things in two different contexts:

The fact that the same phrase appears in both the provision governing eligibility for membership and the clause dealing with eligibility to hold office is not dispositive. It is a canon of construction that the same phrase can mean different things in different contexts. *Lamar v. United States*, 240 U.S. 60, 65 [36 S.Ct. 255, 256–57, 60 L.Ed. 526] (1916); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 461 n. 230 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086 [98 S.Ct. 1281, 55 L.Ed.2d 792] (1978) (same); *Bailey v. United States*, 360 F.2d 113, 116 (9th Cir.1966) (recognizing that identical word can be used with varying meanings within single document; when it is, word should be interpreted in each context according to drafters' intent). As Justice Holmes has explained,

A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.

*Towne v. Eisner*, 245 U.S. 418, 425 [38 S.Ct. 158, 159, 62 L.Ed. 372] (1918).

C. *The Legal Standard Under the National Labor Relations Act.*

The Secretary's claim is that the unions have violated the provisions of 29 U.S.C. § 481(e), which reads, "In any election required by this section ... every member in good standing shall be eligible to be a candidate and to hold office (subject to ...

reasonable qualifications uniformly imposed)." Clearly, Norby is and has been a member in good standing and therefore is presumed eligible to hold office "subject to reasonable qualifications uniformly imposed."

The unions argue that subsection (a), which effectively disqualifies office clericals who work full time for the local union, is a reasonable qualification. It is based upon a policy decision that the union would be hurt if office clericals were given the opportunity to use their positions as stepping stones to elected office. In support, the unions cite 29 C.F.R. § 452.48, a regulation promulgated by the Secretary of Labor:

> A labor organization may in its constitution and bylaws prohibit members who are also its full-time non-elected employees from being candidates for union office, because of the potential conflict of interest arising from the employment relationship which could be detrimental to the union as an institution.

The union's position is based on the fear of a potential conflict of interest. The union worries that office clericals, who have extensive contact with union membership as they collect dues, process complaints, and assign union members to job locations, will use their opportunity for contact with the rank and file to gather support and run for office. Thus, office clericals may use their positions to make political "points" by assigning certain members to certain jobs, allowing members to pay dues late, or passing complaints up the ladder more quickly than usual.

The union also argues that the restriction has been uniformly imposed. The International Union's interpretation of subsection (a) has been consistent every time that the issue has come up. Norby had the benefit of a number of appeals within the union structure. Her last appeal was presented to the entire International annual convention. The appeal was considered purely as a policy matter—in fact, most of the people deciding the appeals had never met Norby.

Furthermore, the unions argue that their interpretation of subsection (a) comes from a straightforward reading of the words. The subsection refers to "employment in a full-time *official* capacity." An office clerical is not working in an *official* capacity. Therefore, an office clerical is not "working at the calling" within the expanded definition of subsection (a). The unions argue that the fact that the International has received only three inquiries from local unions as to the meaning of this subsection over 15 years shows that the provision is rarely misinterpreted.

The Secretary argues that the parenthetical portion of § 481(e) is not important in this case. The Secretary cites *Wirtz v. Hotel Employees Union*, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968):

> Congress plainly did not intend that the authorization in § 401(e) [29 U.S.C. § 481(e)] of 'reasonable qualifications uniformly imposed' should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording that 'every member in good standing shall be eligible to be a candidate and hold office....' This conclusion is buttressed by other provisions of the Act which stress freedom of members to nominate candidates for office. Unduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb. The check of democratic elections as a preventative measure is seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents. (Footnote omitted.)

This quote from *Hotel Employees* must be taken in context. The Court in *Hotel Employees* struck down a union candidacy limitation which rendered 93% of union members ineligible for office. Under the rule at issue in *Hotel Employees*, only those who had held union offices in the past were eligible to run for union offices. As a practical matter, this put the control over union offices entirely in the hands of incumbent officers, who appointed members from the rank and file to fill union offices temporarily when a vacancy developed. As a result of the rule, the only way a non-officer could become eligible to run for an office was to be appointed to that

office by the incumbents. The facts of *Hotel Employees* are quite different from the facts at issue here.

The Secretary argues that the courts have not hesitated to take action where a union has unreasonably restricted the right of its members to run for office. That is true in cases where a substantial number of members are restricted, *Hotel Employees* (93% of the members ineligible); *Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977) (96.5% ineligible), or where the requirement in question is inherently subjective, *Donovan v. Local Union No. 120*, 683 F.2d 1095 (7th Cir. 1982) (requirement of "competency"). However, the courts are generally reluctant to reinterpret provisions of the union constitution. "Absent bad faith or other compelling circumstance, the union's interpretation of its constitution, as well as its interpretation of its own rules and procedures, should prevail over the court's notion as to how the union should conduct its affairs." *Busch v. Givens*, 627 F.2d 978, 981 (9th Cir.1980). See also *Stelling v. Electrical Workers*, 587 F.2d 1379, 1389 (9th Cir.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979).

D. *Conclusion.*

The court is keenly aware that the Ninth Circuit cases indicate a great reluctance to second-guess a union's interpretation of its own constitution. The unions' interpretation of Section 4(a) of Article V of the ULUC, standing alone, is reasonable enough that this court would not overturn it.

The issue here, however, is not Section 4(a) alone. Subsection (a) was clearly intended to expand the ordinary definition of "working at the calling" by including elected full-time union officials who would not ordinarily be considered to be "working at the calling." Subsection (a) was clearly *not* intended to restrict the definition of "working at the calling."

The unions have not offered any reasonable argument for the proposition that Emma Norby was not "working at the calling" within the ordinary definition of that phrase. The Local and International admittedly represent office clerical workers who

perform functions similar to those performed by Ms. Norby. Norby was required to pay dues and become a member of both the Local and the International. She has been a member in good standing since she began working for the union.

Article V, Section 4 of the ULUC provides that:

No person shall be eligible to hold any office in the Local Union if he has not been regularly working at the calling of the International Union during the entire year immediately prior to nomination.

The court finds that Ms. Norby was unquestionably working at the calling of the International Union during the year prior to her nomination. She was therefore eligible to run for office under any reasonable interpretation of the language of Section 4.

E. *Order.*

ACCORDINGLY, IT IS ORDERED that Ms. Norby's June 1986 election to the office of Recording Secretary/Secretary–Treasurer/Delegate of Local 1130 is valid and the subsequent rerun election is invalid. Local 1130 and the Laborers' International Union of North America are directed to install Ms. Norby in that office.