PENSION BENEFIT GUARANTY
CORPORATION, Plaintiff,

v.

CENTER CITY MOTORS, INC., Center City Leasing, Inc., Warren L. Swink and Zola Beth Swink, Defendants.

Civ. No. 82–0774–JLI(M).

United States District Court,
S.D. California.

Nov. 5, 1984.

Henry Rose, General Counsel, Washington, D.C., Peter W. Bowie, Chief Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Michael B. Poynor, Sternberg, Eggers, Kidder & Fox, Bruce J. MacDonald, Brown, MacDonald & Ravin, San Diego, Cal., Richard Apodac, Santa Barabara, Cal., for defendants.

IRVING, District Judge.

This action was brought in June, 1982, by the Pension Benefit Guaranty Corporation (hereafter referred to as "PBGC"). PBGC alleges that the defendants, Center City Motors, Inc., Center City Leasing, Inc., Warren L. Swink, and Zola Beth Swink, are liable to PBGC under the provisions of the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1976 & Supp. 1980) (hereafter referred to as "ERISA"). Specifically, PBGC alleges that the defendants are each liable for a deficiency existing in the pension plan for the employees of Center City Motors, Inc., on December 31, 1975, the date the plan was terminated.

PBGC bases this liability on 29 U.S.C. § 1362. § 1362 assesses liability, in favor of PBGC, against "any employer who maintained a plan" that was underfunded on the date the plan terminated. 29 U.S.C. § 1362(a). "Employer," as the term is used in § 1362, is defined in § 1301. *PBGC v. Ouimet Corp.*, 630 F.2d 4, 11 (1st Cir.1980). § 1301(b) states that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a

single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b) (1976).

PBGC alleges in its complaint that Warren L. Swink and Zola Beth Swink (hereinafter referred to as "the Swinks") are "the former and current owners of [Center City] Motors, Inc., the current owners of [Center City] Leasing, Inc. and proprietors of certain rental property." *Complaint* at ¶ 10. PBGC further alleges that Center City Motors, Inc. "and the rental property business of the Swinks constituted a commonly controlled group of trades or businesses and were a single employer under 29 U.S.C. § 1301(b)." *Complaint* at ¶ 13.

The Swinks seek summary judgment, as to all claims against them, solely on the ground that their rental property proprietorship does not constitute a "trade or business" within the meaning of § 1301(b), and therefore, they can not be liable as part of a commonly controlled group under § 1362. In order to be entitled to summary judgment, the Swinks must demonstrate that there are no triable issues of facts that would support an inference that the Swinks property rental amounted to a "trade or business," within the purview of § 1301. *See Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir.1973). The question of whether an entity is engaged in a "trade or business" is primarily a factual determination. *Higgins v. Commissioner*, 312 U.S. 212, 217, 61 S.Ct. 475, 477, 85 L.Ed. 783 (1941). However, the Swinks argue that first, the lease at issue is a net lease, and second, that because Congress has specifically stated that a net lease is considered *not* to be a trade or business for certain purposes of the tax code, Congress must have intended to exclude such a lease from consideration as a "trade or business" under § 1301.

A "net lease" is defined in § 163 of the Internal Revenue Code as a lease in which the lessor's § 162 (trade or business expenses) deductions are less than 15% of the rental income, or in which the lessor is guaranteed a specified return or a guarantee against loss. 26 U.S.C. § 163(d)(4)(A).

A net lease is essentially a lease in which the tenant is responsible for one or more specific expenses, such as maintenance, that are generally the primary obligation of the landlord. *See* Golden, *Investment Interest Deduction in New Law*, 33 J. Tax'n 252, 252 (1970). The property held by the Swinks in this case was leased to Center City Motors, Inc., at the time the pension plan terminated. The lease provided for payment of taxes, repairs, and utilities by the lessee, Center City Motors, Inc. Therefore, the Swinks argue that the property was leased under a net lease, they were not engaged in a trade or business, and can not be considered part of a commonly controlled group of trades or businesses.

However, the interpretations given to the term "trade or business," in the Internal Revenue Code are not determinative of how those terms are interpreted in ERISA. *Cf. United Steelworkers v. Harris & Sons Co.*, 706 F.2d 1289, 1299 (3d Cir.1983) (determination of whether "partial termination" of pension plan occurs, for tax purposes, not binding on whether plan terminates for purposes of PBGC insurance). When it enacted 26 U.S.C. § 163, Congress was concerned that allowing interest deductions for property that produces little current income would allow taxpayers to use that deduction to offset other income, and avoid taxation. H.Rep. No. 533, 92d Cong., 1st Sess. 72, *reprinted in* 1971 U.S.Code Cong. & Ad.News 1825, 1861. Similarly, in 29 § 167, which allows the depreciation, generally, of assets used in a trade or business, Congress encouraged investment in plant and equipment, expansion of industrial capacity, and promotion of economic growth. S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News, 4629, 4656. Finally, in 26 U.S.C. § 355, Congress attempted to preclude the transformation of corporate earnings, from ordinary income into capital gains. H.Rep. No. 1337, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 4025, 4065.

ERISA does not contain a definition of the term "trade or business."

Therefore, the court must construe this term in light of the purpose of the statute. *See Bailey v. United States,* 360 F.2d 113, 116 (9th Cir.1966). Because one of Congress' overriding concerns when it enacted ERISA was to ensure that workers' retirement benefits would actually be available during retirement, *Nachman Corp. v. PBGC,* 446 U.S. 359, 374, 100 S.Ct. 1723, 1732, 64 L.Ed.2d 354 (1980), the language of ERISA should be construed liberally to provide the maximum amount of protection to workers covered by pension plans. *Connolly v. PBGC,* 581 F.2d 729, 731 (9th Cir.1978). When Congress defined all members of a controlled group as a single "employer," it clearly intended to prevent a business from limiting its responsibilities under ERISA by the fractionalization of its business operations. The Senate report explicitly states:

> the committee, by [§ 1301(b)], intends to make it clear that the coverage and anti-discrimination provisions cannot be avoided through separate corporations instead of separate branches of one corporation.

S.Rep. No. 383, 93d Cong., 2d Sess. 43, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4890, 4928. *See also* H.Rep. No. 807, 93d Cong., 2d Sess. 50, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4670, 4716.

The Conference Committee Report clarifies Congress' intent to apply these same principles to the PBGC's enforcement of liability for underfunded pension plans:

> In determining the employer who may be liable for insurance coverage losses of corporation, all trades or businesses under common control are to be treated as a single employer.

H.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 5038, 5155.

In light of this intent, the court finds that Congress did not intend to exclude from its definition of a "trade or business" in § 1301, a rental proprietorship which leases property, under a net lease, to an entity that is under common control.

The Swinks' motion for summary judgment is based upon their assertion that their conduct does not rise to the level of a trade or business because the net lease of the property delegates responsibility for certain items, such as maintenance and taxes, to a third party. However, the lease merely delegates these responsibilities to Center City Motors, Inc., a corporation wholly-owned by the Swinks. The court finds that Congress did not intend to exempt such a business arrangement from its definition of a trade or business. On the contrary, Congress intended to *prevent* such fragmentation of business operation.

The court expresses no opinion on how it would regard a net lease in which the lessee was not an entity under common control. But where, as here, the net lease is between the two entities PBGC alleges are under common control, the court concludes that the fact that one of the commonly controlled entities bears the majority of responsibilities under the lease does not prevent the other entity from being considered a trade or business for purposes of § 1301. As the court stated in *PBGC v. Anthony Co.,* 537 F.Supp. 1048, 1052 n. 6 (N.D.Ill.1982):

> Section 1301(b)(1) and 1362 reflect a Congressional concern that the realities of business organization should prevail over the formalities of corporate structure in imposing liability to correct a perceived social problem: termination of employee benefits plans causing defeat of employee expectations as to their vested rights.

As an alternative basis for its decision, the court finds that PBGC has showed the existence of facts that would justify the inference that the Swinks operated the rental property proprietorship and the corporation, Center City Motors, Inc., as two separate parts of a single trade or business. PBGC has alleged that Mr. Swink used his position as an automobile dealer to obtain permanent financing for the development of the property, that his selection of the property was accomplished with the aid of corporate resources, and that his purchase and development of the property

was simply a part of an overall plan for the operation of his business of operating an automobile dealership. These facts preclude summary judgment, because they would support an inference that the Swinks' rental property proprietorship was operated as part of a trade or business carried on by the Swinks. *See Tibbals v. United States,* 362 F.2d 266, 272, 176 Ct.Cl. 196 (1966) ("It is appropriate, in circumstances such as these, to see whether the taxpayer uses his controlled company—for instance, as agent, co-participant, or joint venturer—to implement or further his own personal business, as he easily can.")

Under either rationale, the Swinks are precluded from summary judgment. Their concluding statement, that Congress did not intend to subject individuals' property to ERISA liability does not aid them here. It is precisely because the leasehold was used as a business related asset that the court is unable to find that they are entitled to summary judgment on the issue of whether their proprietorship is a "trade or business" as that term is used in § 1301. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is denied.