TEXTILE WORKERS PENSION FUND, TWUA Dyers Vacation and Welfare Fund, Jim Cecchi, et al., as Trustees of the Textile Workers Pension Fund, Plaintiffs,

v.

Helen OLTREMARE and Vincent Oltremare, Defendants.

No. 89 Civ. 0647 (WK).

United States District Court, S.D. New York.

Oct. 27, 1989.

Ronald E. Richman, Chadbourne & Parke, New York City, for plaintiffs.

Michael J. Dell, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Textile Workers Pension Fund, TWUA Dyers Vacation and Welfare Fund, and their fiduciaries ("the Funds") brought suit under ERISA against defendants Helen and Vincent Oltramare ("the Oltramares"), who controlled two corporations against which plaintiffs in a separate action obtained a consent judgment for unpaid contributions and withdrawal liability. In this action, the Funds seek to obtain satisfaction of the judgment from the personal assets of the Oltremares.

The Funds propose two theories for defendants' liability. In the first cause of action, they allege that the circumstances of Mrs. Oltremare's ownership and sale of a parcel of land in Haverstraw rendered her ownership of the property a "trade or business" within the meaning of 29 U.S.C. § 1301. They allege that, under ERISA, this unincorporated "trade or business" is part of the control group to which the Funds may look for satisfaction of the consent judgment. In the second cause of action, they seek to reach the Oltremares' personal assets by piercing the corporate veil of the corporations against which the consent judgment was entered.

The Oltremares move for dismissal of both claims on the grounds that neither states a claim upon which relief can be granted. In answering the Oltremares' motion, the plaintiffs—both in their formal papers and in oral argument—asserted many facts not mentioned in the complaint. For the purposes of this motion we will assume the complaint to have been amended to state those additional facts. For reasons that follow, we grant defendants' motion with respect to the first cause of action, and with respect to the second, which we decline to dismiss, we grant leave to replead at the close of discovery so that the additional facts and any others that may be discovered may be formally asserted.

## BACKGROUND

The Oltremares are the sole shareholders of two corporations, Elk Piece and H & M Enterprises. Elk Piece dyed fabric for various manufacturers. H & M Enterprises owned and leased to Elk Piece the machinery used to dye the fabric. Pursuant to collective bargaining agreements, Elk Piece was obligated to contribute to the Textile Workers Pension Fund and the TWUA Dyers Vacation and Welfare Fund. In December 1986, Elk Piece began incurring liability for deficient contributions to the Funds. In 1987, Elk Piece permanently ceased operations and withdrew from the Pension Fund. The Funds brought suit against Elk Piece to recover delinquent contributions and withdrawal liability, and asserted that H & M was liable as a member of the same control group. The parties entered into a consent judgment in 1988, pursuant to which the two corporations admitted joint and several liability to the Funds for an amount in excess of $500,000. Neither Elk Piece nor H & M has made any payment in satisfaction of that judgment. In January 1989 the Funds filed this action seeking satisfaction of the consent judgment from the Oltremares' personal assets.

## FACTS

The Funds' assertion that the Haverstraw property was operated as a trade or business is based upon the following allegations. In 1970, the property was purchased by Dinjapur Realty Corporation and Tamatave Enterprises, Ltd., corporations wholly owned by Mrs. Oltramare. Sometime before 1977, these corporations unsuccessfully applied for zoning changes that would enable the land to be developed as a shopping center. In 1979, however, the town board granted the zoning changes because there had since been a fire on the property and because the passage of time had made residential development of the property less economically feasible. Mrs. Oltremare and three other individuals then formed a limited partnership for the purpose of developing the property as a shopping center. Mrs. Oltremare was the only limited partner. In furtherance of the partnership's objective, Dinjapur and Tamatave conveyed the property to Mrs. Oltremare, who then conveyed the property to the partnership. In November 1981, however, after discovering that the project was not financially sound, the partnership conveyed the property back to Mrs. Oltremare.

Four years later, in November 1985 (two years before Elk Piece had incurred any liability to the Funds), she entered into a contract of sale with one Leif Bergstrol whose purchase of the property was made contingent upon his ability to acquire a drainage easement. Prior to the closing, Bergstrol obtained two drainage easements, and appeared several times before the town planning board to submit plans for construction of a proposed shopping

center. On June 2, 1987, Mrs. Oltramare conveyed the property to him for $996,000.

With respect to the corporate veil theory, plaintiffs make the following factual assertions with regard to the corporations' operations. When the Elk Piece plant was in operation, manufacturers sent cloth to the plant for dyeing. Because the manufacturers allowed for approximately five percent shrinkage and Elk Piece was able to stretch the fabric approximately ten percent, Elk Piece retained for itself sizeable remnants of the dyed fabric. These remnants were customarily sold at the plant for cash. At the time of Elk Piece's liquidation, a large stock of fabric disappeared from the plant, and was not accounted for in the documentation of the liquidation. Plaintiffs now have reason to believe that Elk Piece and H & M were treated by defendants as the same company, and that H & M kept no corporate records.

## DISCUSSION

### The First Cause of Action

█ Viewing the allegations in a light most favorable to plaintiffs, we find the first claim to be without merit. At the outset, we note the irrelevance of facts that occurred prior to the limited partnership's conveyance of the property in 1981 to Mrs. Oltremare. The defendants' corporations did not incur any liability to the Funds until December of 1986, at which time Mrs. Oltremare had owned the Haverstraw property for five years as a result of the 1981 conveyance. From the remaining allegations we can conclude only that Mrs. Oltremare held this land as an investment asset and ultimately sold it. All efforts to obtain town board approvals or the drainage easement were made by the prospective purchaser. There is not the slightest suggestion that Mrs. Oltremare participated in any way.

We know of no decision that has held mere ownership of real property to be a trade or business within a common control group under § 1301 of ERISA. To the contrary, when ownership of real property has been considered a trade or business within a control group, there has been a

solid nexus between the real property and the other trades or businesses within the control group. Thus, in *Pension Benefit Guaranty Corp. v. Center City Motors, Inc.* (S.D.Cal.1984) 609 F.Supp. 409, the court had before it a rental proprietorship which leased property, under a net lease, to an entity that was under common control. The court concluded that "Congress did not intend to exempt such a *business arrangement* from its definition of trade or business." *Id.* at 412 (emphasis added).

In the present case, plaintiffs have failed to allege *any* connection between the Haverstraw property and the commonly-controlled corporations. Indeed, the allegations establish that since Mrs. Oltremare took the property back in 1981 the property has been nothing more than a personal asset similar to a custody account with a bank, an asset the plaintiffs concede could not be a trade or business under ERISA's common control provisions. Accordingly, we grant defendants' motion with respect to the first cause of action.

### The Second Cause of Action

█ The plaintiffs must concede that the facts now in hand may not be sufficient to support their second cause of action. They assert, however, that such facts do provide a good faith basis for further inquiry. With respect to the corporations controlled by the defendants, they allege that H & M kept no corporate records, that Elk Piece indulged in a regular practice of generating cash profits by selling fabric remnants, and that during liquidation of the Elk Piece assets—in an apparent continuation of this practice—a large store of fabric remnants disappeared from the Elk Piece plant.

We are persuaded that, within the peculiar confines of ERISA, these allegations entitle plaintiffs to additional discovery. Our determination comports with the broad remedial approach of ERISA which was intended "to remove jurisdictional and procedural obstacles which in the past appear to have hampered ... recovery of benefits due to participants." S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 4639, 4838,

4871. Congress enacted ERISA in part because many employees were being deprived of anticipated benefits due to the inadequate funding of benefit plans. 29 U.S.C. § 1001. Unfortunately, that is precisely what happened to the employees who are now represented by the plaintiffs in this action. To dismiss this action at such an early stage might well undermine the equitable results Congress intended ERISA to achieve.

To the extent that federal common law principles have emerged, they weigh in favor of denying defendants' motion. Although few cases explain the federal common law of disregarding the corporate fiction, *see Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.* (N.D.Ill. 1989) 709 F.Supp. 140, 143, where, as here, federal legislative policies are implicated, federal common law generally gives less deference to the corporate form than does state law. *See Lowen v. Tower Asset Management, Inc.* (2d Cir.1987) 829 F.2d 1209, 1220. Indeed, the First Circuit has specifically noted that ERISA does not attach great weight to the corporate form. *See Alman v. Danin* (1st Cir.1986) 801 F.2d 1, 3.

In addition, we note that many of the material facts are within the exclusive control of the defendants and their corporations. In particular, plaintiffs have not had a meaningful opportunity to substantiate their belief that Elk Piece's practice of selling cloth remnants resulted in direct personal benefit to the defendants.

In light of the above considerations, we at this time deny defendants' motion to dismiss the second cause of action. We refer the case to Magistrate Bernikow for supervision of discovery relating to the cash sales of fabric remnants during Elk Piece's operations and the extent to which the Oltremares directly benefited from those sales. This practical approach is consistent with the policies of ERISA and fairly addresses defendants' concern that we not permit onerous discovery at this stage of the litigation. Upon completion of this limited discovery and after plaintiffs have either filed an amended complaint or noti-

fied defendants of their decision not to do so, defendants may renew their motion with respect to this cause of action.

## CONCLUSION

Defendants' motion to dismiss is granted with respect to the first cause of action and is denied with respect to the second. The case is referred to Magistrate Bernikow for the limited discovery authorized by this order.

SO ORDERED.