**ILGWU NATIONAL RETIREMENT FUND, et al., Plaintiffs,**

v.

**B.B. LIQUIDATING CORP., et al., Defendants.**

**No. 89 Civ. 2005 (RWS).**

United States District Court, S.D. New York.

Jan. 16, 1991.

Arnold & Porter by Kenneth V. Handal, and Michael D. Schissel, of counsel, New York City, and Arnold & Porter by K. Peter Schmidt, and Philip W. Horton, of counsel, Washington, D.C., for plaintiffs.

Dublirer, Haydon, Straci & Victor by Charles Haydon, and Ronald A. Straci, of counsel, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs ILGWU National Retirement Fund and two of its trustees ("the Fund") have moved to file an amended complaint and for summary judgment on the complaint as amended. Defendant B.B. Liquidating Corp. ("BBLC") has cross-moved for summary judgment. For the following reasons, the motion to amend the complaint is granted and both motions for summary judgment are denied.

### THE PARTIES

The Fund is a New York trust which provides pension benefits to approximately 130,000 workers in the garment industry.

It is a "pension plan" and a "multiemployer plan" as those terms are defined in the Employee Retirement Income Security Act (ERISA) §§ 3(2), 3(37), 29 U.S.C. §§ 1002(3), 1002(37).

BBLC is a New York corporation which operated under the name Blassport, Ltd. ("Blassport–BBLC") from the time of its incorporation in the early 1970's until it sold all of its assets in 1983. At that time, BBLC apparently changed its name to B.P.T. Liquidating Corp. ("BPT"), although the Fund alleges that it currently operates under the name B.B. Liquidating Corp.[1] Norman Zeiler ("Zeiler") is alleged to be a New York resident who was an officer and principal stockholder of BBLC at all times pertinent to this action.

### THE STATUTORY FRAMEWORK

Multiemployer pension plans such as the Fund are covered under ERISA as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1405 (1980) ("MPPAA"). Under these amendments, an employer who ceases making contributions to a multiemployer plan becomes liable for at least a portion of the amount of the plan's "unfunded vested benefits." 29 U.S.C. § 1381. It is the responsibility of the plan sponsor to notify the employer of the amount of its withdrawal liability and to make arrangements to collect that liability. § 1382. This notification is to be made "as soon as practicable" after the employer stops contributing. § 1399(b).

When an employer stops contributing as a result of selling its assets to an unrelated party, it incurs no withdrawal liability provided that the purchaser continues to contribute to the plan for a period of five years after the sale. § 1384(a)(1). If the purchaser continues to contribute but ceases before five years from the sale date,

---

**1.** From the pleadings it is difficult to ascertain the defendant's actual current or past names. In its answer to the original complaint, the defendant denied the Fund's allegations that B.B. Liquidating was a New York corporation which had operated under the name Blassport, Ltd. prior to 1983. In support of its motion for summary judgment the defendant has supplied an affidavit of Nathan Altman ("Altman"), the

defendant's accountant, who testifies that the defendant was originally incorporated under the name Blassport, Ltd. and changed its name in 1983 to B & B Liquidation Corp. In its proposed amended complaint, the Fund asserts that the defendant's name is currently B.P.T. Liquidating, but that it operates under the name B.B. Liquidating.

then the seller incurs withdrawal liability as if it had withdrawn at the date of sale. § 1384(a)(2). In such a circumstance, of course, the plan sponsor must wait until the purchaser stops contributing before it can even determine the fact of the seller's withdrawal liability, let alone the amount of such liability.

Section 1401(a) requires that disputes between an employer and a plan sponsor concerning the amount of the employer's withdrawal liability be resolved through arbitration. Such arbitration must be initiated within 60 days of the date of the sponsor's notification to the employer of the withdrawal liability except in certain instances not relevant to this case. Notwithstanding the timely initiation of arbitration, the employer is required to make all payments requested by the sponsor during the pendency of the arbitration.

Upon an employer's failure to make timely payment as scheduled by the sponsor, the sponsor may bring suit to enforce the withdrawal liability. § 1451(b). The limitations period for such an action is six years from the date of the default in payment.

THE FACTS

Many of the facts of this case are in dispute. Although many of the facts which follow are taken from the Fund's complaint and its proposed amended complaint, all significant differences between the Fund's allegations and BBLC's contentions are noted.

The Fund alleges that prior to 1983, BBLC, operating as Blassport–BBLC, made regular contributions to the Fund on behalf of some of its own employees and on behalf of employees of companies that manufactured garments for it. According to the Fund, the total amount received from Blassport between 1975 and 1982 was $607,413.69. BBLC for its part claims that it has never made any contributions to the Fund.

In or around August of 1983, BBLC sold its assets to Design Assets Holdings, Inc.

("DAHI") and changed its name to BBLC. At the same time, DAHI adopted the name Blassport, Ltd. ("Blassport–DAHI") and, the Fund asserts, began to make contributions to the Fund. The Fund also asserts that at the time of the sale of its assets, BBLC made a substantial distribution of the proceeds of the sale to Zeiler.

In 1986, Blassport–DAHI apparently went out of business and, consequently, ceased to make contributions to the Fund. Pursuant to § 1382, the Fund attempted to notify Blassport[2] of its withdrawal liability in June 1988, by way of a letter addressed to "Blassport" in New York City. BBLC does not dispute that it did in fact receive this letter, although it argues that the letter "was obviously meant for a successor company," namely Blassport–DAHI. The letter set forth Blassport's liability for 1975 through 1985 and calculated a total amount due to the Fund of $506,151. Although the letter clearly covered liability for years both before and after the sale to DAHI and explicitly stated that "Pursuant to [29 U.S.C. § 1401] any dispute arising out of the Fund's determination and review must be resolved through arbitration," BBLC took no action at all, but simply ignored the letter altogether.

When the Fund did not receive the first payment scheduled in the June 30 letter, it sent a second letter addressed to Zeiler personally on September 1, 1988. This letter reiterated that Blassport had incurred withdrawal liability to the Fund, and stated that the amount of the liability had been recalculated as $627,512. Again, BBLC does not deny receiving this letter, but apparently chose to ignore it as well.

Subsequently, in March 1989, the Fund brought this action to enforce its right to collect from BBLC for the withdrawal liability. It now seeks to amend its complaint to correct the official name of the defendant and to add Zeiler himself as a defendant. It also moves for summary judgment, asserting that because BBLC did not

**2.** Apparently, the Fund was unaware of the distinction between Blassport–BBLC and Blassport–DAHI, as its letters referred to liability amounts for years both before and after the 1983 sale to DAHI.

seek arbitration within the statutory time limit specified in § 1401(a), it may not now contest either the issue of its liability or the amount of that liability. BBLC's cross-motion seeks summary judgment based on its claim that it never was an "employer" under the MPPAA which could have incurred withdrawal liability, and that because it was not subject to the statue at all it was not even bound to seek arbitration of the issue as required by § 1401.

## DISCUSSION

### Motion to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a) leave to amend a pleading should be freely granted "unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979).

■ The Fund claims that it only recently discovered that, although the defendant corporation operates, or did operate, under the name B.B. Liquidating, its actual name is B.P.T. Liquidating. The defendants have offered no reason to deny leave to correct this error and will suffer no prejudice since they appear to have had no trouble identifying which corporation was being sued throughout the course of the litigation.

■ As for the Fund's attempt to add Zeiler personally as a defendant, the Fund claims that only through discovery has it learned that Zeiler received a distribution from BBLC as a result of the sale to DAHI. It claims that under principles of New York corporate law, it is entitled to reach that distribution if the assets of BBLC are insufficient to pay the total withdrawal liability to the Fund. "Under the N.Y.Bus.Corp.Law § 1005, shareholder to whom the remaining assets of a dissolved corporation are distributed hold those assets in trust for the benefit of the corporation's creditors." *Retirement Fund of the Fur Manufacturing Industry v. Getto & Getto, Inc.*, 714 F.Supp. 651, 656 (S.D.N.Y. 1989) (holding shareholders of dissolved corporation liable for payment of withdrawal liability because of their receipt of assets of corporation, regardless of motive for distribution).

The amendment to add Zeiler is appropriate under the circumstances here. He was personally notified of the Fund's claims against Blassport in September of 1988, and as the sole stockholder of BBLC he has been intimately involved in this litigation up to this point. He has presented no evidence of unfair prejudice which he will suffer as a result of being added as a defendant.

■ Zeiler's only contention is that the claims against him are time-barred by the provisions of 29 U.S.C. § 1451(f). This provision establishes a limitations period for claims under ERISA of six years from the date on which the cause of action arose. Apparently, Zeiler believes that the Fund's claim against him arose at the time of the sale of Blassport, in 1983. In fact, because Blassport–BBLC incurred no liability until Blassport–DAHI stopped contributing to the Fund less than five years after the date of sale, the Fund's cause of action did not arise until BBLC defaulted on the first payment in August 1988. Thus all of the Fund's claims are well within the statutory time limit.

### Motions for Summary Judgment

To grant summary judgment, the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

Nonetheless, summary judgment should be granted where no reasonable trier of

fact could find in favor of the non-moving party. *H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989), and to enable the court to dispose of meritless claims before becoming entrenched in a costly trial. *Donahue*, 834 F.2d at 58 (citing *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

### 1. BBLC's Motion

■ BBLC's argument rests on its assertion that it never made any contributions to the Fund, and therefore was never an employer which could have incurred withdrawal liability. It claims that this principle is so clear that it was entitled simply to disregard the Fund's June 1988 and September 1988 notices, notwithstanding the fact that the letters distinctly set forth liability assessments for years before 1983, when BBLC still operated Blassport. However, the Fund has produced receipts suggesting that Blassport–BBLC did indeed contribute to the Fund on behalf of its own employees and those of other companies. Because, as discussed below, the existence of a prior relationship between BBLC and the Fund is material to the question of whether BBLC was obligated to seek arbitration of its dispute with the Fund, these receipts are sufficient to create a triable issue of fact precluding summary judgment for BBLC.

### 2. The Fund's Motion

Resolution of the Fund's motion is a closer question. The Fund relies primarily on *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879 (2d Cir.1988), in which the Second Circuit held that even a corporation contesting the fact that it had been an employer was compelled to seek arbitration of that issue. In *Levy Bros.*, the defendant Levy Brothers Frocks ("Levy") had at one time been a party to a collective bargaining agreement with the ILGWU, but had purportedly withdrawn from the agreement, although it had con-

tinued to observe most of its provisions. Among other things, Levy had continued to make regular contributions to the Fund, although it claimed not to know that such payments covered pension benefits for union workers. 846 F.2d at 882.

When Levy subsequently went out of business, the Fund assessed withdrawal liability and notified Levy much as it notified BBLC in the present case. Levy disregarded the notices, asserting that because it had not been an employer subject to the MPPAA it could have no withdrawal liability. When Levy refused to make payment, the Fund brought suit to enforce the withdrawal liability, claiming that Levy was barred from contesting the Fund's determination of withdrawal liability because it had failed to initiate arbitration within the time specified in the MPPAA.

In reversing the district court's dismissal of the complaint, the Second Circuit held that, as a former participant in a collective bargaining agreement and contributor to the Fund, Levy was familiar with the statutory scheme and had not been entitled to disregard the Fund's notices, even if it contested the threshold issue of whether or not it was subject to the MPPAA. If Levy had not initiated timely arbitration, the Court of Appeals held, the Fund was entitled to collect the full amount of the assessed withdrawal liability. 846 F.2d at 885–87.[3] *See also Teamsters Pension Trust Fund v. Allyn Transportation Co.*, 832 F.2d 502, 505–06 (9th Cir.1987) (employer's failure to seek arbitration on question of whether withdrawal was before effective date of MPPAA justified judgment in favor of pension plan); *cf. Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899 (7th Cir.1988) (employer's failure to seek timely arbitration constituted waiver of defenses to assessed liability).

BBLC correctly points out that the Second Circuit in *Levy Bros.* was careful to distinguish between a company which had at some time had a connection with the plan for which withdrawal liability was

---

**3.** The case was remanded for the sole purpose of determining whether the time for Levy to request arbitration had expired.

sought and one which asserted that it never had been an employer with regard to the plan.

> It is not as though [Levy] can justifiably claim that it is a complete stranger to the Fund, with the claim against it coming out of the clear blue from an entity it never heard of or dealt with. Many of [Levy's] former employees now receive benefits from the Fund. [Levy's] principals, when operating as a partnership, made payments to the Fund for years and, even after the change in the form of doing business from a partnership to a corporation, these benefit payments continued until operations ceased. We need not decide at what point an employer's connection with a fund would be so attenuated as to support a defense that it was not an "employer" within the meaning of § 1401 and thus not obligated to submit to arbitration.

846 F.2d at 885–86. BBLC asserts that it falls within the latter category, and that therefore *Levy Bros.* does not apply to it. The pivotal issue here is whether or not Blassport–BBLC ever had a connection with the fund, and if so, whether that connection was so "attenuated" as to escape the strict holding of *Levy Bros.*

In deciding this issue, one item of note is that BBLC's own papers make it clear that BBLC was familiar with the MPPAA and the obligations which it places on an employer which withdraws from a multiemployer plan. BBLC asserts that its employees were members of the Amalgamated Clothing Workers Union, and that it made contributions pursuant to a collective bargaining agreement with that union to the Amalgamated Cotton Garment and Allied Industries Fund ("the Amalgamated Fund"). In 1983, when it sold Blassport, BBLC specifically requested a calculation of its withdrawal liability from the Amalgamated Fund. Although not dispositive, this demonstrated familiarity with the statutory scheme of the MPPAA suggests the possibility that BBLC should have known that the appropriate course of action upon receipt of the Fund's letters in 1988 was to initiate arbitration, rather than to ignore the notices and simply refuse to make the requested payments.

Ultimately, however, the issue of the application of *Levy Bros.* to BBLC's situation must turn on whether or not there was any prior relationship between Blassport–BBLC and the Fund. If not, then the simple fact that BBLC was aware of the operation of the MPPAA cannot support a finding that it was obligated to seek arbitration of its liability. As there is a factual dispute concerning whether or not Blassport–BBLC ever made payments to the Fund, this question is not appropriate for summary judgment at this time.

## THE FUTURE COURSE OF THE LITIGATION

Although neither party's case is appropriate for summary judgment at this time, it appears that the only material factual dispute concerns whether or not Blassport–BBLC made the alleged contributions to the Fund. If so, then *Levy Bros.* seems to compel judgment in the Fund's favor. Conversely, if no contributions were made, then not only would BBLC have an argument to support its refusal to seek arbitration, there would seem to be no other basis upon which to find that BBLC had any liability to the Fund at all. Therefore, the logical next step in this proceeding would be to have an evidentiary hearing limited to this one issue.

## CONCLUSION

Based on the lack of any prejudice to the defendants, the Fund's motion to amend the complaint is granted. Because there is a genuine issue of material fact concerning whether or not Blassport–BBLC ever made contributions to the Fund, both the Fund's motion and BBLC's cross-motion for summary judgment are denied.

It is so ordered.