The TRUSTEES OF THE AMALGA-
MATED INSURANCE
FUND, Plaintiffs,

v.

Nathan SALTZ and Jack
Saltz, Defendants.

No. 90 Civ. 0771 (RWS).

United States District Court,
S.D. New York.

March 27, 1991.

As Amended April 1, 1991.

Mark Schwartz, New York City, (Judith Greenspan, of counsel), for plaintiffs.

Berman & Partland, New York City, (Donald P. Partland, of counsel), for defendants.

---

## OPINION

SWEET, District Judge.

Plaintiffs, the Trustees of the Amalgamated Insurance Fund ("the Fund"), have moved for summary judgment on their claim for ERISA pension plan withdrawal liability against the defendants Nathan and Jack Saltz ("the Saltzes"). For the following reasons, the motion is granted.

### The Parties

The Fund is a trust fund designed to provide health, welfare and retirement benefits to eligible employees of businesses in contractual relations with the Amalgamated Clothing and Textile Workers Union ("the Union") and its affiliates. The Fund actually consists of two distinct sub-funds: the Retirement Fund and the Social Insurance Fund. The Retirement Fund is a multiemployer pension plan as that term is defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. §§ 1381–1405.

The Saltzes are the sole shareholders of Frank Saltz & Sons, Inc. ("the Corporation"), which prior to 1989 had a collective bargaining agreement with the Union under which it contributed to the Fund on behalf of its employees. The Saltzes are also the owners as joint tenants with rights of survivorship of the property at which the Corporation's business was located.

### The Statutory Framework

Under ERISA and the MPPAA, an employer who ceases making regular contributions to a multiemployer pension plan is required to assume responsibility for its share of the plan's "unfunded vested benefits." 29 U.S.C. § 1381. It is the responsibility of the plan sponsor to notify the employer of the amount of its withdrawal liability and to make arrangements to collect that liability. 29 U.S.C. § 1382.

An employer who receives a notice of withdrawal liability may seek further review by the plan sponsor pursuant to § 1399(b)(2)(A), and if still dissatisfied may seek arbitration of the dispute under § 1401. Except in unusual circumstances, arbitration must be initiated within 60 days of the sponsor's final notification of liability. Notwithstanding the timely initiation of arbitration, the employer is required to make all scheduled payments during the pendency of the arbitration. Upon an employer's failure to make timely payment as requested by the sponsor, § 1451(b) authorizes the sponsor to bring suit to enforce the withdrawal liability.

For the purposes of ERISA and the MPPAA, the term "employer" is defined to include all "trades or businesses" which are controlled in common with the actual employing entity:

> For purposes of this subchapter, under regulations prescribed by the [PBGC,] all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and *all such trades and businesses [shall be treated] as a single employer.*

29 U.S.C. § 1301(b)(1); *see also* 29 C.F.R. § 2612.3 (1990). Under regulations promulgated in connection with this section of the statute, the term "trades or businesses (whether or not incorporated) which are under common control" is given the same meaning as that provided in § 414(c) of the

Internal Revenue Code, 26 U.S.C. § 414(c). 29 C.F.R. § 2612.2 (1990). Section 414(c) and the regulations promulgated thereunder describe in detail how to determine when several "trades or businesses" are commonly controlled, 26 C.F.R. § 1.414(c) (1990), but do not define the term "trade or business" itself.

*The Facts*

The relevant facts in this case are undisputed. The Saltzes each own fifty percent of the shares of the Corporation, which operated its clothing manufacturing business from 347 Chestnut Street ("the Property") in Passaic, New Jersey. The Property was owned by the Saltzes beginning in 1979 and was owned by them as joint tenants with rights of survivorship from 1985. The Corporation leased the Property from the Saltzes through a net lease under which it paid rent and assumed responsibility for managing and maintaining the Property. The lease extended from March 1, 1987 to February 28, 2001. Pursuant to the lease, the Saltzes received rental income during 1987 and 1988 and took depreciation on the Property while the Corporation paid all real estate taxes.

The Corporation was party to a collective bargaining agreement with the Union under which it was to make contributions to the Fund on behalf of its employees. On August 7, 1989 the Corporation ceased operations, and on August 10 the Fund notified the Corporation by mail that the Corporation's withdrawal liability had been calculated at $1,211,491.27 and that the first payment would be $161,679.81, due on October 1, 1989. The letter included a cursory explanation of the process for initiating a review of the liability by the sponsor and the possible consequences of failing to make payment. No mention was made of the statutory requirement that disputes be arbitrated or of the time limit for initiating such arbitration. A second letter was sent on October 20, 1989 to inform the Corporation that its withdrawal liability had been recalculated to be $1,431,546.65.

The Corporation failed to respond to these notices and failed to make any payments on its liability. It is currently insolvent. On December 11, 1989, following the default on the first payment, the Fund notified the Saltzes that, because of their rental of the Property to the Corporation, it considered them to be members with the Corporation of a common control group, and that it would seek to collect the entire amount of the Corporation's withdrawal liability—which had been accelerated by the Corporation's default—from them personally. The Saltzes refused to pay anything and did not seek arbitration. The Fund filed suit on February 6, 1990.

*Discussion*

This case is clearly one in which summary judgment is appropriate. The parties agree on all of the relevant facts, with the only disputed issue being whether the Saltzes were, by virtue of their rental of the Property to the Corporation, engaged in a trade or business under common control with the Corporation, such that they must share the Corporation's withdrawal liability. As this is purely a question of law, there is no genuine issue of material fact which would require a trial. Fed.R. Civ.P. 56.

■ The Saltzes do not dispute that they controlled the Corporation, so that there was common control over the Corporation and the rental activity. The necessary inquiry, therefore, is narrowed to the question of whether that rental activity constituted a "trade or business" within the meaning of § 1301(b)(1). The Saltzes assert that the lack of any activity on their part with respect to the management or maintenance of the Property precludes characterizing their involvement as a trade or business.

Two courts have previously considered questions similar to that presented here. Both have determined that for ERISA purposes the rental of property to a corporation under common control with the property owner/lessor is sufficient to make the rental a trade or business. *United Food v. Progressive Supermarkets*, 644 F.Supp. 633 (D.N.J.1986); *Pension Benefit Guaranty Corporation v. Center City Motors, Inc.*, 609 F.Supp. 409 (S.D.Cal.1984). In

both cases, the issue was whether a net lease of property was a "trade or business" sufficient to make the lessor liable for the lessee corporation's withdrawal liability under § 1301(b)(1)'s common control group definition. Both courts discussed the fact that "trade or business" is not defined in § 414(c), that the term is used throughout the Internal Revenue Code without definition and that it is subject to varying interpretation depending on the context in which it is used. As the *United Food* court stated

> ERISA itself authorizes attention only [to] § 414(c) of the Internal Revenue Code and to regulations promulgated thereunder. Nothing prevented Congress from authorizing attention to other sections and regulations had Congress wanted to do so. Since the meaning of "trade or business" varies somewhat from one Code section to another, a suggestion that courts should look anywhere in the Code for guidance is an invitation to mass confusion.

644 F.Supp. at 638 (citations omitted); *accord Center City Motors*, 609 F.Supp. at 411.

In light of the absence of statutory guidance as to how to determine when an activity should be considered a "trade or business," both the *United Food* and *Center City Motors* courts held that it was necessary to look to the purposes of ERISA and the MPPAA.

> Because one of Congress' overriding concerns when it enacted ERISA was to ensure that workers' retirement benefits would actually be available during retirement, the language of ERISA should be construed liberally to provide the maximum amount of protection to workers covered by pension plans. When Congress defined all members of a controlled group as a single "employer," it clearly intended to prevent a business from limiting its responsibilities under ERISA by the fractionalization of its business operations.
> . . . .
> In light of this intent, the court finds that Congress did not intend to exclude

from its definition of a "trade or business" in § 1301, a rental proprietorship which leases property, under a net lease, to an entity that is under common control.

*Center City Motors*, 609 F.Supp. at 412 (citations omitted); *accord United Food*, 644 F.Supp. at 638–39.

The Saltzes argument in support of their position that their lease of the Property was not a "trade or business" for ERISA purposes is unpersuasive. They do not distinguish *Center City Motors* or *United Food*, but rather argue simply that both cases were wrongly decided. Notwithstanding the explicit findings of both courts that the term "trade or business" has no single, well-established meaning in the Internal Revenue Code, they argue that it should be construed by reference to Code and case law decided under it, without considering the different concerns which underlie ERISA. Particularly to the extent that they claim that the *Center City Motors* court did not consider the legislative history of ERISA or § 1301(b)(1), their argument is incorrect as well as unpersuasive. *See Center City Motors*, 609 F.Supp. at 412.

In summary, because both *Center City Motors* and *United Food* appear to be based on sound reasoning, and because the Saltzes have not offered compelling reasons to disregard those cases, their net lease arrangement with the Corporation is held to have been a "trade or business" for the purposes of § 1301(b)(1). The Saltzes are therefore liable as members of a common control group for the Corporation's withdrawal liability to the Fund.

Because notice to one member of the control group is considered as notice to all members, *Teamsters Pension Trust Fund v. Allyn Transportation Co.*, 832 F.2d 502, 506–07 (9th Cir.1987); *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118 (3d Cir.1986), the Saltzes' time to contest the Fund's assessment of withdrawal liability, either by responding to the Fund itself or by seeking arbitration, appears to have expired. *Cf. ILGWU National Retirement Fund v.*

*Levy Bros. Frocks, Inc.,* 846 F.2d 879 (2d Cir.1988); *ILGWU National Retirement Fund v. B.B. Liquidating Corp.,* 759 F.Supp. 128 (S.D.N.Y.1991) (failure to initiate timely arbitration, even where employer contested characterization as employer subject to liability, warranted summary judgment against employer). Therefore, the Saltzes have no further defense to the Fund's action, and summary judgment is warranted.

*Conclusion*

For all of the foregoing reasons, the Fund's motion for summary judgment is granted.

Submit judgment on notice.

It is so ordered.