**PENSION BENEFIT GUARANTY CORPORATION Plaintiff.**

v.

**DON'S TRUCKING COMPANY, INC., et al. Defendants.**

**No. CIV.A. 3:03CV631.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 12, 2004.

Nathaniel Rayle, Pension Benefit Guaranty Corporation, Office of the General Counsel, Merrill Debs Boone, Pension Benefit Guaranty Corporation, Office of the General Counsel, Washington, DC, Charles Manley Allen, Jr., Anthony Tacconi, Goodman Allen & Filetti PLLC, Glen Allen, for Pension Benefit Guaranty Corporation, plaintiff.

Robert Allen Canfield, Paul McCourt Curley, Canfield Shapiro Baer Heller & Johnston, Richmond, VA, for Don's Trucking Company, Inc., Donald R. Beverly, Martha H. Beverley, A General Partnership Between Donald R. Beverley and Martha H. Beverley for the Leasing of Real Estate, Name, If Any, Unknown, defendants.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Cross Motions for Summary Judgment filed by Plaintiff Pension Benefit Guaranty Corporation and by Defendants Donald Beverley and Martha Beverley. For the reasons discussed below, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED.

### I.

Pension Benefit Guaranty Corporation ("PBGC") is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer and enforce the pension plan termination insurance program created by Title IV of the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301–1461 ("ERISA"). PBGC assures the timely payment of guaranteed pension benefits to participants in pension plans that terminate when covered by Title IV. Defendant Don's Trucking Company, Inc. ("Don's Trucking") is a Virginia corporation owned by Defendants Donald and Martha Beverley. Donald and Martha Beverley (the "Beverleys") are married. Together they owned 100% of the voting stock of Don's Trucking. The Beverleys continuously leased to Don's Trucking property of which they are record owners ("Leasing Activity").[1]

Don's Trucking sponsored the Don's Trucking Defined Benefit Pension Plan (the "Plan"), which was covered by the pension plan termination insurance program established under Title IV of ERISA. Donald Beverley withdrew $224,440.19 in assets from the Plan. By agreement dated August 19, 1997, the Plan terminated with insufficient assets, with a

1. The property is located at 1811 and 1801 Coxendale Road, in Chester, Virginia. The Beverleys own the 1811 Coxendale Road property as tenants by the entireties.

termination date of July 29, 1997. PBGC, as the appointed statutory trustee of the Plan, sued Donald Beverley in federal court to collect his fiduciary liability, pursuant to 29 U.S.C §§ 1105(a)(3), 1106(a)(1)(D), 1106(b)(1), and 1109(a).[2] On April 11, 2001, PBGC obtained a judgment against Donald Beverley in the amount of $358,044.40, plus post-judgment interest. To date, the judgment has not been satisfied. On July 28, 2003, PBGC commenced this civil action against Donald Beverley and others to collect the statutory liability arising under 29 U.S.C. § 1362(a) and (b), as result of the termination of the Plan (the "Employer Liability"). PBGC claims that all of the Defendants are jointly and severally liable to PBGC for damages in the amount of $366,181.51, as of June 30, 2003, plus continually accruing interest.

PBGC now moves for summary judgment arguing: (1) that each of the Defendants are jointly and severally liable for the amount of Employer Liability; and (2) that the Defendants' Affirmative Defenses are insufficient as a matter of law.[3] In turn, Donald and Martha Beverley move for summary judgment, asserting that PBGC is barred from pursuing this action against Mr. Beverley by res judicata and by the election of remedies doctrine.

## II.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit,

In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) .... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (emphasis in original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## III.

A. *Each of the Defendants are jointly and severally liable as a matter of law.*

When a pension plan terminates under 29 U.S.C. § 1342, the plan's contrib-

---

**2.** *PBGC v. Beverley,* No. 3:00CV797 (E.D.Va., Richmond Division).

**3.** The Affirmative Defenses in dispute are res judicata and election of remedies. The Defendants have not reasserted their failure to state a claim defense.

uting sponsor and each member of its controlled group become jointly and severally liable for the Employer Liability—i.e., the amount of unmet pension obligations as of termination, plus continually accruing interest. 29 U.S.C. § 1362(a) & (b)(1). Here, PBGC alleges that Don's Trucking, as contributing sponsor, and the Leasing Activity, as a business in the sponsor's controlled group, are jointly and severally liable for the Employer Liability. PGBC further argues that the Beverleys are each personally liable because they intended to be partners in the Leasing Activity.

The Beverleys concede that Don's Trucking was the Plan's contributing sponsor, and that the amount of Employer Liability was $366,181.51 as of June 30, 2003.[4] Therefore, Don's Trucking is indisputably liable for the Employer Liability. However, the Beverleys claim that they did not intend to be partners in the Leasing Activity and that therefore Martha Beverley cannot be held personally liable. The liability of the Leasing Activity and the Beverleys will now be addressed in turn.

1. *The Leasing Activity is jointly and severally liable under the applicable PBGC regulations.*

The Leasing Activity[5] is subject to Employer Liability because it qualifies as a member of the Don's Trucking controlled group under the applicable PBGC regulations, which are coextensive with Treasury Regulations under IRC § 414(b) and (c). All trades or businesses in the same controlled group are subject to Employer Liability. *See* 29 U.S.C. § 1362. A "controlled group" is defined as all organizations under common control. 29 U.S.C. § 1301(a)(14)(A) & (B).

The Leasing Activity was a member of a "brother-sister" type of controlled group. Two organizations belong to a brother-sister group if the same five or fewer individuals own a "controlling interest" in each organization (at least 80 percent of the stock), and exercise "effective control" over each organization (own more than 50 percent of the stock). *Central States, Southeast and Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 891 (7th Cir.1992); 26 C.F.R. § 1.414(c)–2(b)(2) & (c)(2).

Incorporating these definitions, the Leasing Activity was a business under common control with Don's Trucking. First, both the Leasing Activity and Don's Trucking qualify as trades or businesses.[6] *See Ditello*, 974 F.2d at 890 ("[F]ederal courts ... have uniformly held that leasing property to a withdrawing employer is a 'trade or business' for purposes of section 1301(b)(1).").[7] Second, the Beverleys owned 100 percent of both entities. Thus,

4. This includes unfunded benefit liabilities in the amount of $233,978, plus $132,203.51 in interest.

5. The Leasing Activity is identified in the caption of this case as "A General Partnership Between Donald R. Beverley and Martha H. Beverley for the Leasing of Real Estate, Name, If Any, Unknown."

6. The parties do not dispute that Don's Trucking was a trade or business.

7. Although, as a tenant, Don's Trucking conducted many traditional landlord activities—such as paying for maintenance, repairs, utilities, and the mortgages—courts have held such "passive" real estate leasing a trade or business, in order to prevent employers from limiting their responsibilities under ERISA by fractionalizing their business operations. *Central States Pension Fund v. Lloyd L. Sztanyo Trust*, 693 F.Supp. 531, 536–37 (E.D.Mich.1988) (citing *United Food v. Progressive Supermarkets*, 644 F.Supp. 633, 638–39 (D.N.J.1986)); *PBGC v. Center City Motors*, 609 F.Supp. 409, 411–12 (C.D.Cal.1984); *Trustees of Amalgamated Ins. Fund v. Saltz*, 760 F.Supp. 55, 57–58 (S.D.N.Y.1991).

the same two individuals owned a controlling interest in, and were in effective control of, both Don's Trucking and the Leasing Activity. *See* 26 C.F.R. 1.414(c)–2(b)(2) & (c)(2). Therefore, the Leasing Activity was a member of the Don's Trucking controlled group under 29 U.S.C. § 1301(a)(14)(A) and (B). As such, the Leasing Activity is jointly and severally liable for the Employer Liability.

### 2. *Donald and Martha Beverley are also jointly and severally liable.*

■ As for Donald and Martha Beverley, they are likewise personally liable for the Employer Liability because they evinced an intent to be partners in the Leasing Activity. *Central States, Southeast and Southwest Areas Pension Fund v. Johnson,* 991 F.2d 387, 388 (7th Cir. 1993). Under federal common law, a partnership is found when two parties intend to join together to conduct an enterprise. *Connors v. Ryan's Coal Co., Inc.,* 923 F.2d 1461, 1467 (11th Cir.1991). Intent "may be determined with reference to an express agreement or from the circumstances surrounding the purported partnership arrangement." *Id.*

The circumstances of this case closely mirror the facts in the *Johnson* case, wherein the Seventh Circuit held that intent to form a partnership may be found from: (1) the husband and wife's purchase of the leasing business with jointly-owned funds; (2) the rental income from the business going into joint accounts; (3) losses from the leasing activity being deducted on the couple's joint tax return; (4) the wife doing some clerical or administrative work at her husband's office; and (5) the husband and wife each owning 50% of another business. *Johnson,* 991 F.2d at 392–93.

The *Johnson* factors are also present in this case. The Beverleys were the record owners of the leased property, and owned one of the properties as tenants by the entireties. As such, they were the joint owners of the business that leased the properties as well. Moreover, the properties were purchased mainly through mortgage payments by Don's Trucking, which was jointly and solely owned by the Beverleys. Don's Trucking paid all of the utilities, repair, and maintenance expenses for the properties, and the Beverleys paid at least $12,587.49 of the taxes owed on the properties in 1997 and 1998. All rent that was paid in 1997 and 1998 was deposited in checking accounts jointly owned by the Beverleys, and the couple deducted the leasing losses on their 1997 and 1998 joint tax returns. Finally, Martha Beverley served as the Secretary–Treasurer of Don's Trucking, and one of its three directors, in 1997 and 1998. Based upon these factual circumstances, the Beverleys demonstrated an intent to form a partnership in the business of leasing property to Don's Trucking.[8] As partners, the Beverleys are liable for the debts of the partnership, i.e., the Leasing Activity. *Johnson,* 991 F.2d at 391.[9] Accordingly, the Bever-

**8.** The Beverleys argue that summary judgment is "notoriously inappropriate where intent [is] at issue." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992) (quotations and citations omitted). However, as the *Johnson* court noted, "[t]he moving party is entitled to summary judgment when the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of mind." *Johnson,* 991 F.2d at 394 (quotations and citations omitted). Accordingly, summary judgment is appropriate in this case.

**9.** PBGC also argues that the Spousal Attribution Regulation renders both Donald and Martha Beverley owners of the Leasing Activity for the purpose of liability. However, in *Johnson,* the Seventh Circuit held that the Spousal Attribution Regulation only adds additional businesses to the controlled group, and does not add additional owners. *Johnson,* 991 F.2d at 390. Therefore, liability cannot be derived from the Spousal Attribution Regulation.

leys are each jointly and severally liable for the Employer Liability.

B. *PBGC's action against Donald Beverley is not barred by the doctrine of res judicata.*

■ In defense, the Beverleys argue that PBGC is barred by res judicata from recovering the Employer Liability from Mr. Beverley. A party invoking res judicata must establish three elements: (1) a final judgment on the merits in the earlier suit; (2) identity of claims; and (3) identity of the parties or their privies. *Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.1981). The first element is undisputed. PBGC obtained a final judgment on the merits against Mr. Beverley in the earlier breach of fiduciary duty suit. However, the parties dispute the second and third elements of res judicata.

■ The Beverleys maintain that the claims in both suits are identical because they involve Mr. Beverley's activities surrounding the Plan. The Fourth Circuit employs "a transactional approach" to determine whether there is identity of claims. *Meekins v. United Transp. Union,* 946 F.2d 1054, 1058 (4th Cir.1991). "[C]laims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts." *Grausz v. Englander,* 321 F.3d 467, 473 (4th Cir.2003) (quoting *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1316 (4th Cir.1996) (internal quotations omitted)).

■ PBGC asserts that the transactions or facts giving rise to its claim in the earlier suit were Donald Beverley's illegal transfers of Plan assets; whereas the transaction or fact giving rise to its present claim was the Plan's termination. *See* 29 U.S.C. § 1362(a). However,

[t]he preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were *previously available* to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*Meekins,* 946 F.2d at 1058 (emphasis added) (quoting *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (internal quotations and citations omitted)). PBGC's present cause of action accrued on July 29, 1997, when the Plan was terminated. Therefore, PBGC could have raised the claims asserted in this case when it litigated the breach of fiduciary duty action, but chose not to. Moreover, "it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986). Accordingly, the claims against Donald Beverley in this suit and the prior suit arise out of the same transaction or series of transactions.

Although the Defendants have established a final judgment on the merits in the prior suit, and identity of claims, they fail to meet the identity of parties or privies element of res judicata. Donald Beverley and PBGC appeared in both this case and the earlier suit. However, PBGC is acting in a different capacity in this action. In the first suit, PBGC initiated a breach of fiduciary duty action as the Plan *trustee.* In contrast, in this case, PBGC is suing in its *own capacity,* to collect liability owed directly to PBGC. The Fourth Circuit has noted that:

the rule of differing capacities in the context of res judicata provides that [a]

party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

*Andrews v. Daw,* 201 F.3d 521, 525 (4th Cir.2000) (citations and quotations omitted). Therefore, applying the rule of "differing capacities," the Beverleys have not satisfied the identity of parties or privies element, and their res judicata defense therefore must fail.

C. *PBGC's action against Donald Beverley is also not barred by the doctrine of election of remedies.*

 Finally, the Beverleys argue that PBGC is barred from pursuing this present action against Donald Beverley because PBGC "elected its remedy" against Mr. Beverley when it sued him for breach of his fiduciary duty. The doctrine of election of remedies applies when a party "pursues remedies that are legally or factually inconsistent." *Dionne v. Mayor and City Council of Baltimore,* 40 F.3d 677, 681 (4th Cir.1994) (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). The doctrine seeks, in part, "to prevent double recovery for a single injury." *Artis v. Norfolk & Western Railway Co.,* 204 F.3d 141, 143 (4th Cir.2000). The Beverleys assert that if PBGC is granted judgment against Mr. Beverley, double recovery will result because PBGC already possesses a judgment against him, and seeks an additional judgment for approximately the same amount and for the same injury, i.e., the improperly withdrawn benefits.

 However, election of remedies is not required by the possibility of double recovery. *Alexander,* 415 U.S. at 51 n. 14, 94 S.Ct. 1011. Judicial remedies can be structured to avoid such a windfall. *Id.* In order to avoid double recovery, the judgment awarded in this case shall be offset by any actual recovery from the prior suit.[10] To date, no money has been recovered from Mr. Beverley.

### III.

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED and Donald and Martha Beverley's Motion for Summary Judgment is DENIED. Judgment is hereby AWARDED in favor of PBGC, jointly and severally against each Defendant, in the amount of $366,181.51, plus interest,[11] minus any amounts actually recovered on PBGC's April 11, 2001 judgment against Donald Beverley.

An appropriate Order shall issue.

---

10. However, any offset of Donald Beverley's Plan benefit against the earlier judgment shall not be offset against the Employer Liability judgment, since PBGC did not include that benefit in its determination of the amount of Employer Liability.

11. Pre-judgment interest from June 30, 2003, at the rate provided under 26 U.S.C. § 6621(a)(2), plus post-judgment interest at the rate provided under 28 U.S.C. § 1961.